UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELL OFFSHORE INC. | Civil Action No. |
| VERSUS | Judge |
| BP EXPLORATION & PRODUCTION INC. | Magistrate Judge |

**COMPLAINT**

Shell Offshore Inc. files this complaint and alleges as follows:

1. The plaintiff in this action is Shell Offshore Inc. ("*Shell*"), a Delaware corporation. Shell is authorized to do and doing business in Louisiana.

2. Made defendant in this action is BP Exploration & Production Inc. ("*BP*"), a Delaware corporation. BP is authorized to do and doing business in Louisiana.

3. This civil action constitutes a case or controversy arising out of or in connection with operations conducted on the Outer Continental Shelf (the "*OCS*") that involve development and production of minerals of the subsoil and seabed of the OCS and that also involve rights to such minerals. This civil action arises under federal law, more specifically, the Outer Continental Shelf Lands Act (the "*OCSLA*"), 43 U.S.C. § 1331 *et seq.* This court has subject matter jurisdiction under both 28 U.S.C. § 1331 and 43 U.S.C. § 1349.

4. Shell's cause of action arises in connection with its ownership interest and rights in federal oil and gas leases covering submerged lands in the Mississippi Canyon area of the Gulf of Mexico offshore Plaquemines Parish, Louisiana. This district is the judicial district nearest to the Mississippi Canyon area where the cause of action arose. Further, the federal leases at issue were awarded in New Orleans and, along with the applicable unit agreement, are filed with the

Bureau of Ocean Energy Management (formerly the Minerals Management Service) of the United States Department of the Interior in its New Orleans office.  Further, BP is subject to personal jurisdiction in this district.  Venue is proper in this district both under 28 U.S.C. § 1391 and 43 U.S.C. § 1349.

5. Effective August 1, 1992, Shell and BP Exploration & Oil Inc. entered into (a) a Unit Operating Agreement, which the parties subsequently amended and supplemented various times in writing (as so amended and supplemented, the "***UOA***"), for the Mississippi Canyon 807 Unit Offshore Louisiana (the "***MC 807 Unit***") and (b) a Unit Agreement, which the parties subsequently amended and supplemented various times in writing (as so amended and supplemented, the "***UA***"), covering the MC 807 Unit.

6. BP is the successor-in-interest of BP Exploration & Oil Inc. under the UOA and UA and ratified the UOA.

7. The UOA governs the exploration, development and operation of the parties' Mars prospect.  The "***Expanded Contract Area No. 2***" under the UOA includes all or portions of thirteen lease blocks, including Block 764 (and more broadly the MC 807 Unit), in the Mississippi Canyon area of the Gulf of Mexico offshore Plaquemines Parish, Louisiana.

8. The UOA provides that Shell owns 71.5% and BP owns 28.5% of the "***Working Interest***" in the Expanded Contract Area No. 2.

9. The UOA designates Shell as the Operator for the Expanded Contract Area No. 2.

10. Following "***Appraisal Operations***" under the UOA to evaluate the potential of the Mars prospect, the parties agreed on a "***Final Development Plan***" under the UOA.

11. The "*Initial Platform*" under the UOA was installed in 1996. The parties have spent billions of dollars to explore the Mars field, install infrastructure and drill and produce wells under the UOA.

12. Specifically at issue here is a "*Subsequent Development Operation*" that Shell proposed under the UOA in April 2016 to drill and complete a well in Block 764 on a lease bearing Serial No. OCS-G 08852 (the "*MC 764-5 Well*") at a cost that Shell then estimated to exceed $180 million. Shell also estimated that BP's Working Interest share of the costs to drill and complete the MC 764-5 Well would exceed $52 million.

13. By letter dated April 8, 2016, Shell gave written notice to BP of Shell's proposal under the UOA for the MC 764-5 Well and included its Authorization for Expenditure ("*AFE*") and AFE Justification for the well (together, "*Shell's Notice*"). Under Article 9.3.3 of the UOA, BP had thirty days from receipt to respond to Shell's Notice.

14. Article 12.2 of the UOA gives each party an election either to participate in a "*Subsequent Development Operation*" and bear its Working Interest share of the costs or to forgo participation:

> 12.2   Operations by Fewer Than All Parties.  If fewer than all Parties elect to participate in and agree to bear 100% of the cost and risk of a Subsequent Development Operation (excluding an election on the Initial Platform), Operator shall conduct such operation for the Party or Parties who elect to participate, subject to the provisions of Article 13. . . .   Costs of a Non-consent Subsequent Development Operation shall be recouped in accordance with Articles 13.2 and 13.5, as applicable, and the drilling of such well or the conduct of such operation shall be governed by Article 13 except as provided differently in this Article 12. . . .

15. After receiving Shell's Notice, BP advised Shell that it was "capital constrained in 2016." The parties exchanged proposals on a potential deal for Shell to advance (or "carry") BP's share of costs for the MC 764-5 Well, but no deal was reached. BP never suggested at the

time that Shell lacked authority under the UOA to drill the MC 764-5 Well at Shell's sole cost without BP's consent.

16. BP never elected to participate in, or signed Shell's AFE for, the MC 764-5 Well. BP's decision not to participate made BP a "*Non-Participating Party*" with respect to that operation and triggered Article 13 of the UOA, which governs "*Non-Consent Subsequent Development Operations*."

17. Shell's decision to drill and complete the MC 764-5 Well at its sole cost and risk made it a "*Participating Party*" in that operation under the UOA.

18. Drilling commenced on or about May 7, 2016. The MC 764-5 Well was successfully completed, began producing hydrocarbons in or about July 2016 and has produced hydrocarbons since then.

19. Article 1.6 of the UOA defines a "*Development Step Out Well*" as follows:

1.6   Development Step Out Well shall mean any well drilled as a Development Operation which is:

    (1)   proposed as an expendable well; or

    (2)   proposed for an objective zone, horizon, or formation which does not have a Producible Well as herein defined; or

    (3)   proposed for an objective zone, horizon, or formation which has a Producible Well but such objective will be penetrated at a location more than 5,000 feet from the nearest penetration of the same objective from a Producible Well or such objective is mutually agreed to be in a totally separate fault block; or

    (4)   proposed for an objective zone, horizon or formation which is located below the deepest Producible Reservoir.

The MC 764-5 Well is a "Non-Consent Development Step Out Well" as a "Non-Consent Subsequent Development Operation" under the UOA.

20.     A decision not to participate in a well drilled under the UOA has significant consequences for both the Non-Participating Party and the Participating Party.  Article 13 of the UOA exists on the one hand to incentivize participation, but on the other hand also to fairly compensate a Participating Party who commits significant additional capital and incurs substantial additional risks to undertake a Non-Consent Subsequent Development Operation as Shell did here.  In the case of the MC 764-5 Well, Shell bore not only BP's $52 million share of the well costs, but also the full risk that the well might be unsuccessful.

21.     Article 13 of the UOA provides that reward follows risk and recognizes that some operations are more risky and deserve greater compensation if successful.  Among other things, Article 13.2 of the UOA divests a Non-Participating Party of its "interest and leasehold operating rights in the Non-Consent [Subsequent] Development Operation and title to production therefrom" so that in the event of a successful well a Participating Party can recoup a multiplier of its investment in the Non-Consent Subsequent Development Operation.

22.     By application of Article 13.2 of the UOA, BP was divested of its interest and leasehold operating rights in the MC 764-5 Well and title to production therefrom until the Participating Party, Shell, recoups its reward--the compensation due under Article 13.2.1 of the UOA.

23.     Article 13.2.1 of the UOA provides a formula for determining the compensation due to and to be recouped by a Participating Party from the Non-Participating Party's relinquished share of production proceeds for the Participating Party's having borne the sole cost and risk of the Non-Consent Subsequent Development Operation.  More specifically, Article 13.2.1 provides as follows:

> 13.2.1 <u>Interest Reversion.</u>  Such interest, rights, and title shall revert to each Non-Participating Party when the Participating Parties have recouped out

of the Non-Participating Parties' Share of the proceeds of production from such Non-Consent Subsequent Development Operation an amount equal to the sum of the following:

(a) Six Hundred Percent (600%) if Non-Consent Development Step Out Well Operations, or three hundred percent (300%) if a Non-Consent Development Well, of the Non-Participating Party's Share of the cost of drilling, completing, equipping through the Christmas tree, recompleting, deepening, deviating, or plugging back each Non-Consent Development Step Out or Development Well, whichever is applicable, reduced by the Non-Participating Party's Share of any cash contribution received under Article 22.3; plus,

(b) One hundred fifty percent (150%) of the Non-Participating Party's Share of the cost of facilities necessary to carry out the operation; plus,

(c) Three hundred percent (300%) of the Non-Participating Party's Share of the cost of any Non-Consent Subsequent Platform which is installed to carry out the operation; plus,

(d) One hundred percent (100%) of the Non-Participating Party's Share of the cost of using any Platform or Subsea Production System already installed for which that Party has a Participating Interest; plus,

(e) One hundred percent (100%) of the Non-Participating Party's Share of the cost of operating expenses, royalties, and severance, gathering, and production taxes until items (a) through (d) above have been recouped.

Upon the recoupment of such costs, a Non-Participating Party shall become a Participating party [*sic*] in such operations.

24. By its terms, the UOA recognizes that a Non-Consent Development Step Out Well is significantly risky, and Article 13.2.1 sets a correspondingly high 600% cost recovery factor to appropriately reward a Participating Party for advancing the costs and undertaking such risk. Because the MC 764-5 is a Non-Consent Development Step Out Well, Article 13.2.1 of the UOA entitles Shell to recover (in addition to all applicable amounts under clauses (b)-(e) quoted in paragraph 23 above) an amount using this 600% cost recovery factor under the formula described in clause (a) quoted in paragraph 23 above.

25. Shell has not yet recouped from BP's relinquished share of production proceeds attributable to production from the MC 764-5 Well the compensation due Shell under Article 13.2.1 of the UOA.

26. Only after Shell fully recoups the amount due under Article 13.2.1 of the UOA is BP entitled to become a Participating Party in the MC 764-5 Well and have its title revert thereunder.

27. In or about September or October 2017, BP expressed to Shell for the first time the position that Shell lacked authority to drill the MC 764-5 Well without BP's consent.

28. By letter dated May 10, 2018 from BP's Jordan Janik to Shell's Christopher Cucchiara ("**BP's Demand Letter**"), BP "demand[ed] that all production from the [MC 764-5] Well from th[e] point [Shell has recouped 100% of its costs to drill, complete, hook-up and commission the MC 764-5 Well] be allocated and delivered to BP at its Mars Working Interest."

29. BP's Demand Letter cites to and relies exclusively on Article 6.2.2 of the UOA for the proposition that, without BP's mutual agreement, Shell "did not have the right (nor the approval) to proceed with operations on the [MC 764-5] Well, nor has it the right to withhold proceeds associated with the Well."

30. BP's reliance on Article 6.2.2 is misplaced. BP's purported interpretation ignores that Article 6.2.2 applies *"[e]xcept as noted elsewhere in the [UOA]."* Several other provisions in the UOA, including without limitation Articles 10.2 (Operations by Fewer Than All the Parties), 12.2 (Operations by Fewer Than All Parties) and 13 (Non-Consent Subsequent Development Operations), expressly authorize a Participating Party who agrees to bear 100% of the cost and risk of an operation to proceed without the participation or consent of another party to the UOA.

31.     BP has repudiated and otherwise denied Shell's rights under Articles 12 and 13 of the UOA.  Further, BP's Demand Letter puts a cloud on Shell's title to the MC 764-5 Well, the production therefrom, the lease on which it is drilled (OCS-G 08852) and the MC 807 Unit.

32.     In essence, refusing to bear its share of the costs and risks, BP contends it is entitled to a 28.5% Working Interest in the MC 764-5 Well for the exact same amount as if it had been a Participating Party who committed from the beginning to pay a 28.5% share of the costs for the well.  By its clear and express terms, the UOA rejects such an utterly unfair result.

33.     This case involves an actual controversy for which a declaration of rights of the parties and such necessary or proper other relief may be granted under 28 U.S.C. §§ 2201-2202.

34.     Shell seeks, and is entitled to, a declaration of the parties' rights under the UOA as follows:

(a)     Because BP did not timely elect to participate in the MC 764-5 Well, Article 12.2 of the UOA authorized Shell to participate in and agree to bear 100% of the cost and risk of drilling and completing the MC 764-5 Well without BP's consent or participation;

(b)     the MC 764-5 Well is a Non-Consent Development Step Out Well under the UOA;

(c)     under Article 13.2 of the UOA, BP relinquished its "interest and leasehold operating rights in the [MC 764-5 Well] and title to production therefrom" until and unless Shell recoups out of BP's share of production proceeds from the MC 764-5 Well an amount equal to the sum calculated pursuant to Article 13.2.1 of the UOA;

(d)     Shell's right to recoup under Article 13.2.1 of the UOA includes (in addition to all applicable amounts under Article 13.2.1(b)-(e) of the UOA) an amount

using the 600% cost recovery factor applicable to a Non-Consent Development Step Out Well Operation; and

(e)     BP is not to become a Participating Party in (and is not entitled to any share of production or production proceeds from) the MC 764-5 Well until Shell has fully recouped out of BP's share of production proceeds from the MC 764-5 Well the compensation to which it is entitled under Article 13.2.1 of the UOA.

35.     Accordingly, and after due proceedings, Shell Offshore Inc. prays for judgment in its favor and against BP Exploration & Production Inc.

(a)     declaring the parties' rights as set forth above in paragraph 34 above;

(b)     recognizing Shell Offshore Inc.'s valid title in and to the MC 764-5 Well, the production therefrom, the lease on which it is drilled (OCS-G 08852) and the MC 807 Unit;

(c)     awarding all court costs to Shell Offshore Inc.; and

(d)     granting all other relief (in law, in equity or otherwise) appropriate in the circumstances.

Respectfully submitted,

 */s/ Scott A. O'Connor*
Scott A. O'Connor (La. Bar No. 19723), T.A.
    soconnor@gamb.law
C. Peck Hayne, Jr. (La. Bar No. 19615)
    phayne@gamb.law
Margaret M. Welsh (La. Bar No. 36078)
    pwelsh@gamb.law
GORDON, ARATA, MONTGOMERY, BARNETT,
    McCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA  70170-4000
Phone: (504) 582-1111 • Fax: (504) 582-1121

*and*

>                Deborah D. Kuchler (La. Bar No. 17013)
>                     dkuchler@kuchlerpolk.com
>                Janika D. Polk (La. Bar No. 27608)
>                      jpolk@kuchlerpolk.com
>                Skylar B. Rudin (La. Bar No. 35035)
>                      srudin@kuchlerpolk.com
>                KUCHLER POLK WEINER, LLC
>                1615 Poydras Street, Suite 1300
>                New Orleans, LA  70112
>                Phone: (504) 592-0691 • Fax: (504) 592-0696
>
>                *Attorneys for Plaintiff Shell Offshore Inc.*